## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No._____

DUTY FREE AMERICAS, INC.,

     Plaintiff,

v.

THE ESTÉE LAUDER COMPANIES, INC.,

     Defendant.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES

Plaintiff Duty Free Americas, Inc. (hereinafter "DFA" or "Plaintiff") hereby sues Defendant The Estée Lauder Companies, Inc. (hereinafter "ELC," or "Defendant") for preliminary and permanent injunctive relief, money damages, and other relief set forth below.

### PRELIMINARY STATEMENT

1.     Plaintiff Duty Free Americas, Inc. is a Florida-headquartered business that operates duty free stores in airports. Duty free space at individual airports is typically obtained pursuant to a competitive bidding process initiated by a request for proposal ("RFP") to develop, manage and operate the duty free retail concessions in that airport. DFA and its competitors bid against one another to secure airport duty free concessions, usually for a period of many years. Through that process, DFA has secured retail space in several major airports in the United States such as JFK, LaGuardia, Atlanta, Detroit, Dulles, and Miami.

2.     DFA is a maverick in the duty free industry. DFA and its competitors purchase products from a small group of name brand manufacturers. DFA's competitors basically offer

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

the same lineup of products, brands, pricing, and terms to airports and customers.   DFA supplements these standard product offerings with nascent and innovative brands (some of which DFA-related entities are also licensed to manufacture) that challenge incumbent brands.   DFA also has a history of offering better pricing and terms than its competitors, and of offering airport authorities higher fees for concessions.

3.      Duty free stores offer a distinct assortment of goods – predominantly beauty products, alcohol, tobacco, and jewelry – for their target customers, specifically outbound international travelers.   DFA and its competitors purchase from manufacturers' "travel retail" divisions at "travel retail" prices, a category of wholesale pricing that is generally distinct from and lower than wholesale prices paid by retail department stores.   Those lower prices at which DFA and its competitors purchase result in lower prices to their consumers.   Outbound international travelers do not pay sales tax or import duties on purchases at duty free stores.   This gives duty free stores an important reputation for offering discounted pricing on favorable terms and this perception drives demand.

4.      One of the most predominant categories of products offered at duty free stores is beauty products – a term that includes subgroups known as cosmetics (make up and skin care) and fragrances.   These are "must have" categories for an airport duty free store.

5.      Defendant The Estée Lauder Companies, Inc. is the largest manufacturer of beauty products sold in duty free stores.   ELC sells many brands, including Aramis, Aveda, Clinique, Donna Karan, Estee Lauder, La Mer, Smashbox, and Tommy Hilfiger.   ELC contends that it carries "must have" beauty product brands and that no airport can or should grant concession rights to a duty free retailer that does not or cannot carry its brands .   ELC has been able to convince airport authorities that its brands are, in fact, necessary at duty free stores.   ELC

2

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com

has announced its intention to use its position in the beauty products industry to "fully leverage" the airport travel-retail segment, which ELC has identified as a "unique consumer segment." ELC has significant market power, including the power to exclude competition and control prices.

6.      The amount and quality of duty free retail space devoted to a product contributes significantly to the level of sales – and consequent market share – for any given manufacturer. ELC has the market power to demand and obtain a disproportionate share and quality of space than other brands in duty free stores.

7.      Prior to June 2008, DFA and ELC maintained a business relationship, with DFA purchasing ELC beauty products for resale at duty free travel retail prices.  During that time, DFA's business grew and it was able to win several RFPs to operate duty free stores at airports.

8.      During DFA and ELC's relationship and, on information and belief, continuing thereafter, ELC sought to establish the retail prices for its products sold by duty free stores in U.S. airports.

9.      In 2007, ELC announced its intent to cease offering distinct travel retail wholesale pricing and to impose higher-than-historical prices on duty free stores.  A true and correct copy of that announcement is attached hereto as Exhibit A.  DFA openly voiced its strong objection to this action and indicated that it would not accept this new pricing.

10.      ELC encouraged DFA (and presumably other duty free store operators) to maintain margins and simply raise prices to consumers.  DFA refused to do this.

11.      Unbeknownst to DFA, DFA's objection evidently prevented ELC from raising prices.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com

12.     Recognizing DFA as the impediment to ELC's acquisition of monopoly power and consequent imposition of monopoly pricing, ELC initiated a campaign of anti-competitive and tortious activity to drive DFA out of business.  ELC has been aided in these activities at times by other duty free operators seeking to eliminate DFA as the maverick competitor.

13.     Once DFA discovered that ELC did not, in fact, raise the prices of its products, DFA attempted to begin purchasing ELC products again.  However, ELC adamantly, repeatedly, and maliciously refused to sell ELC products to DFA, although it is in ELC's financial interest to do so in a properly functioning market.

14.     ELC, either directly or indirectly through its co-conspirators (*i.e.*, DFA's competitors), has also initiated a smear campaign against DFA, injecting itself into RFP processes by stating, directly or indirectly, to airport retail concession decisionmakers that DFA is inferior in quality, that ELC products are an indispensable part of the product mix of any duty free store, and that DFA alone amongst the competing duty free operators is not authorized to sell ELC products.  Although it is not part of the RFP process, ELC has sent letters to airport decisionmakers that were either completely unsolicited or that were solicited by DFA's competitors to inform the airport decisionmakers of ELC's refusal to sell to DFA, with the sole purpose of maliciously trying to eliminate DFA.

15.     ELC refused DFA's requests to cease interfering with RFPs.

16.     In addition to cutting off DFA's supply of ELC brands, and then pointing to DFA's loss of those brands as a reason DFA should be found unqualified to operate in any airport, ELC frustrated DFA's efforts to sell new and different brands that did and would compete with ELC brands.  Because ELC has refused to deal with DFA, DFA used the space previously devoted to ELC brands to introduce and develop even more brands, many of which

4

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

had not previously been introduced into duty free stores in U.S. airports. For example, DFA promoted and sold Smashbox beauty products in its duty free stores, developing significant demand for that brand. In 2010, ELC acquired the Smashbox brand and, after obtaining antitrust regulatory approval for the deal, immediately cut off the supply to DFA, although it is in ELC's financial interest to continue to sell to DFA in a properly functioning market.

17.     ELC's efforts are succeeding. DFA has recently lost several airport bids as a direct and material consequence of ELC's refusal to deal with DFA and the related anti-competitive and tortious conduct by ELC and its co-conspirators, thereby excluding DFA from some airports for many years. By so excluding DFA, ELC has harmed competition at the beauty product manufacturing level because DFA's competitors generally do not introduce and promote new brands. Thus, ELC's actions diminish interbrand competition. The conspiracy's success has also harmed and will continue to harm competition for the airports because, in some airports, ELC and its co-conspirators have succeeded in excluding the maverick, DFA. Likewise, customers have fewer choices – both in terms of prices and brands.

## THE PARTIES

18.     Plaintiff Duty Free Americas, Inc. is a Maryland corporation, which is headquartered in Hollywood, Florida, and owns and operates airport duty free retail stores across the country.

19.     Defendant The Estée Lauder Companies is an international corporation registered in Delaware and with its corporate headquarters in New York City.

## JURISDICTION AND VENUE

20.     DFA brings this action under Section 4 of Clayton Act 15 U.S.C. § 15 to recover treble damages, injunctive relief, and the costs of suit, including reasonable attorneys' fees,

5

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

against ELC for the injuries sustained by DFA in its business and property by reason of ELC's violations as hereinafter alleged of the antitrust laws, and, more particularly, Sections 1-2 of the Act of Congress of July 2, 1890, ch. 647, 26 Stat. 209, as amended (15 U.S.C. §§ 1-2), which is commonly known as the Sherman Act.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337.  Pendent and supplemental jurisdiction over the state law tort and other claims herein is vested in this Court pursuant to 28 U.S.C. § 1367 because those claims arise out of a common nucleus of operative facts as the federal claims.  Jurisdiction over this case is also proper pursuant to 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states, and the amount in controversy exceeds $75,000.

21.     Venue is appropriate here under 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391 in that ELC is found, transacts business, has an agent and maintains an office within this district, and ELC directly and indirectly performed acts within this district in furtherance of the conspiracies and conduct alleged herein.  In addition, a substantial part of the events giving rise to the claims asserted herein occurred in this district.

22.     This Court has personal jurisdiction over ELC because ELC has engaged in and carried on sustained and continuous business ventures in the State of Florida, and this action involves those activities.  Also, ELC committed anti-competitive and tortious acts in the State of Florida, as alleged herein that have caused injury in the State, which is DFA's principal place of business.

## GENERAL ALLEGATIONS

23.     Prior to mid-2008, ELC sold beauty products at standard "travel retail" wholesale prices to DFA.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com

24.     ELC instructed duty free operators, including DFA, on what margins to take on merchandise sold to operators at industry-standard wholesale "travel retail" prices and rates. ELC consequently set prices to consumers at the duty free retail level.

25.     ELC instructed DFA, and upon information and belief, DFA's competitors, on the quality and quantity of display space to be allocated to ELC products within duty free stores. Specifically, ELC insisted on a disproportionate amount of display place to increase market share and prevent allocation of space to competing brands, and subjected DFA, and upon information and belief, DFA's competitors, to periodic audits in connection with display space.

26.     After ELC announced its intent to raise prices, DFA openly objected and advised that such an increase could have the overall effect of diminishing the duty free industry's advantage and reputation for distinctive pricing on premium goods.

27.     DFA's objection evidently prevented ELC from raising prices.  However, DFA was unaware of ELC's decision to ultimately not raise prices for some time thereafter.

28.     ELC, directly or indirectly through its co-conspirators (DFA's competitors), embarked on an aggressive anti-competitive campaign to drive DFA out of business and ultimately control prices, to damage DFA's reputation, and to intentionally, maliciously and unjustifiably interfere with its business relationships and expectancies, as detailed herein.

A.      **The Newark RFP**

29.     On or around December 2, 2008, the leasing agent acting on behalf of Newark Liberty International Airport ("Newark") issued an RFP for the lease and development of duty free retail concessions for a new seven year term.  DFA ultimately submitted a proposal in response to this RFP.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

30.     On information and belief, DFA's competitors made ELC aware that DFA bid for the Newark concession.

31.     On or about December 23, 2008, ELC – which was not a respondent to the RFP – sent an unsolicited letter to the leasing agent who managed the airport concession RFP process for Newark and other airports.  This letter is attached hereto as Exhibit B.  In the letter, ELC states that it is a critical product supplier to duty free stores and needs to "rely upon the quality of [its] authorized retailer partners."  The letter states that ELC is "proud to have established strong and mutually beneficial commercial relationships with, *and only with*" a list of duty free operators.  By listing all competitors *except DFA*, ELC specifically intended to – and apparently succeeded in – negatively influencing Newark's perception of DFA's ability to profitably and effectively operate duty free stores in the airport such that DFA's bid was rejected outright.  The clear import of the letter was to state by negative inference that DFA was not a "quality" duty free operator.

32.     ELC submitted this letter before the identity of Newark bidders was made public.  Consequently, the only plausible explanation for how ELC could have known that DFA bid for the Newark concession was that one or more of DFA's competitors conspired with ELC to have ELC submit this unsolicited letter to the Newark leasing agent, thereby diminishing DFA's chances.  Upon information and belief, this conspiracy was formed for the purpose of excluding DFA from the bidding process and to exclude the innovative brands that DFA carries that compete with ELC.

33.     ELC's statements falsely disparaged DFA's quality and gratuitously highlighted DFA's inability to sell ELC brands – a situation entirely of ELC's own making.  Taken together, these statements fatally undermined DFA's bid.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com

34.   The conspiracy was successful.  DFA's bid was rejected because of ELC's conduct and actions taken by ELC's co-conspirators (DFA's competitors).

35.   Upon information and belief, DFA would have earned millions of dollars in profits per year had it won the Newark RFP.

36.   ELC's conduct negatively impacted DFA's business reputation.

37.   ELC's false and disparaging statements were made with malice and with the intent to injure Plaintiff's reputation and to interfere with its advantageous and prospective business relationships.

**B.     The Boston RFP**

38.   On or around May 6, 2011, an RFP was issued for the lease and development of duty free retail concessions at Boston Logan International Airport ("Boston") for a new 7-year term.

39.   DFA had been the incumbent for 16 years and had doubled sales at Boston during its tenure.

40.   Two DFA competitors submitted bids along with DFA: International Shoppes and Dufry.

41.   Continuing its anti-competitive campaign, on information and belief, ELC and/or its co-conspirators made a communication to relevant retail concession decisionmakers that was similar to the unsolicited letter that ELC had sent during the Newark bid.  Upon information and belief, this communication was intended to exclude DFA and made with a specific intent to facilitate ELC's attempt to monopolize the relevant market.

42.   Upon information and belief, ELC's involvement in the RFP process would not have occurred but for the conspiracy between ELC and other duty free operators.

Coffey Burlington

Office In The Grove, Penthouse    2699 South Bayshore Drive    Miami, Florida 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

43.     Decisionmakers thereafter inquired about DFA's ability to carry ELC products.

44.     The conspiracy was successful.  DFA's bid was rejected and a competitor was awarded the contract.

45.     DFA's bid was rejected, at least in part, because of ELC's conduct and actions taken by ELC's co-conspirators (DFA's competitors).

46.     On information and belief, DFA would have earned millions of dollars in profits per year had it won the Boston RFP.

47.     ELC's conduct negatively impacted DFA's business reputation.

48.     ELC's malicious and tortious conduct was done with the intent to interfere with DFA's advantageous and prospective business relationships.

**C.     The Orlando RFP**

49.     In or around mid-2011, an RFP was issued for the lease and development of duty free retail concessions at Orlando International Airport ("Orlando").  DFA ultimately partnered with a local entity named "Stellar," which operates the duty free concession at Tampa International Airport.  DFA and Stellar jointly submitted a bid for the Orlando duty free concession.

50.     For several years prior to the Orlando bid, ELC had sold ELC products to Stellar directly and, subsequently, indirectly through other wholesalers.  ELC represented to a Stellar executive that if international enplanements were to increase to a certain level at Tampa International Airport resulting in a larger store, or if Stellar were to be awarded the duty free concession at a larger airport, ELC would resume selling ELC products directly to Stellar.

51.     Based on this prior representation to Stellar, DFA/Stellar listed ELC brands in the Orlando bid.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

52.     On information and belief, competing Orlando bidders – Nuance/DFASS and/or Travel Retail – alerted ELC to the situation.  As part of the conspiracy with ELC, ELC or its co-conspirators told relevant Orlando decisionmakers (1) that ELC would not sell to DFA or Stellar, (2) that supply of ELC products is necessary for a duty free store to succeed, and (3) that, consequently, selecting DFA would diminish duty free sales levels in Orlando.  Upon information and belief, these statements were made for the express purpose of excluding DFA (and consequently, the innovative brands carried only by DFA) as part of the conspiracy among ELC and DFA competitors.

53.     Once ELC learned that Stellar's partner was DFA, ELC reversed course and announced it would refuse to sell ELC products to Stellar and that it would continue refusing to sell to DFA.  Pursuant to the conspiracy, ELC subsequently memorialized its refusal to deal in a letter to the Orlando decisionmakers, which noted that ELC would continue refusing to deal with DFA and would not deal with DFA/Stellar or Stellar alone to supply ELC products at Orlando.

54.     The DFA/Stellar bid was rejected, and a competitor, Nuance/DFASS, was provisionally awarded the concession contract.

55.     DFA/Stellar appealed the Orlando decision and was informed during that appeal process that its inability to carry ELC products was a central reason the bid was declined.  A letter issued on January 10, 2012 from Director Philip Brown made clear that DFA's inability to supply ELC products was a direct and material cause of Orlando's decision to reject DFA's bid.

56.     On information and belief, DFA would have earned millions of dollars in profits per year had it won the Orlando RFP.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

D.      **The Atlanta RFP**

57.      On July 24, 2011, an RFP was issued for the lease and redevelopment of duty free retail concessions at the Hartsfield-Jackson Atlanta International Airport ("Atlanta") for a seven-year term, with an option for a three-year renewal.

58.      According to the RFP, Atlanta's annual duty free sales averaged more than $21 million from 2008-2010.  The RFP was designed as a sealed RFP, such that the identities of potential respondents would not be known until proposals were submitted.

59.      DFA prepared and submitted a bid.  In addition, Nuance and two other duty free competitors submitted proposals in response to the RFP.  The deadline for submitting proposals was initially September 13, 2011, but was later extended to October 11, 2011.

60.      On November 1, 2011, Adam Smith, the Chief Procurement Officer, sent a notice to the other bidders that a recommendation of award would be made to DFA.

61.      Upon information and belief, ELC and/or its co-conspirators provided misleading or false information to decisionmakers in an attempt to discredit DFA and to induce them to reject DFA's bid.

62.      On November 30, 2011, the Atlanta City Council's Transportation Committee considered a resolution to award the concession to DFA, but one of the Council members was able to successfully delay further consideration of the resolution at that time.

63.      On December 22, 2011, Mr. Smith wrote to DFA, noting that it had "recently received information regarding DFA's participation" in the Orlando RFP.  Mr. Smith noted that while DFA had identified 19 SKUs of ELC products in DFA's bid, Mr. Smith was advised that DFA could not carry ELC products.  Mr. Smith requested that DFA confirm its ability to carry ELC products.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

64.     DFA confirmed its ability to carry the 19 SKUs of ELC branded products listed (out of more than 4,000 listed non-ELC products), since DFA still had these 19 SKUs in its outstanding inventory.

65.     On January 3, 2012, the Atlanta City Council passed a resolution awarding the duty free contract to DFA.  The Mayor approved this resolution on January 5, 2012.

66.     Upon information and belief, however, DFA's proposal would have been rejected had DFA been unable to supply out of existing inventory the 19 listed ELC SKUs.

67.     On January 17, 2012, Nuance submitted a letter protesting the award to DFA, which accused DFA of intentionally making material misrepresentations.  Nuance further attempted to persuade decisionmakers that carrying ELC's full line of products was essential for the success of a duty free store and that the inability to do so would be disastrous for Atlanta. Upon information and belief, Nuance submitted this letter in furtherance of the conspiracy with ELC to exclude DFA.

**E.     Future RFPs**

68.     Based on the above, ELC and its co-conspirators have embarked on a course of conduct to continue to tortiously interfere with DFA's ability to obtain other airport duty free concessions by, among other things, sending similar unsolicited and disparaging communications into airport RFP decisionmakers, so as to ultimately drive DFA out of business.

## ANTITRUST CLAIMS

A.     <u>The Nature of Competition at Issue</u>

69.     ELC is the largest market participant in beauty products sold in duty free stores in U.S. airports.  ELC controls many of the major brands in that space and ELC claims that those

are "must have" brands for duty free stores.  ELC brands routinely rank first by sales in beauty products in U.S. airport duty free stores.

70.     The barriers to entry to manufacture and sell beauty products for duty free stores are very high.  Beauty product manufacturers rely heavily on brand name recognition, consumer goodwill, and intellectual property rights to secure a competitive advantage.  Developing new products requires substantial capital investments in production and/or significant market promotion before acceptance can be achieved.  Established manufacturers leverage their research, production, and distribution system, as well as their existing brand awareness, to limit competition against their existing brands and to develop and promote new brands owned by those same entities.  These entrenched assets are very hard for a new entrant to replicate. Unsurprisingly, there has been relatively little recent change at the top in the major manufacturers of beauty products marketed and sold in duty free stores.

71.     There are fewer than ten major duty free store operators in the United States. Established relationships with major manufacturers is an important component in this industry to secure supply.  Likewise, the airport RFP process heavily weighs performance at other airports. Thus, it is increasingly difficult for a new market participant to succeed in the duty free space.

72.     Airports in the U.S. each run periodic RFPs for their duty free concessions. Typically, the concessions are granted for terms of between five to ten years.  Between RFPs, there is no opportunity to unseat an incumbent operator absent highly unusual circumstances. With rare exception, an airport chooses one duty free operator for all of the duty free stores within that airport.  Duty free operators compete to win RFPs. Once the RFP process is over, however, the winner develops and operates the duty free stores in that airport, while the losers can do nothing except move on to the next airport opportunity.

14

73.     DFA is a price-maverick, product-maverick, and display-maverick.   DFA's conduct stimulates interbrand competition at the beauty product manufacturing level as well as competition among operators at the RFP level of competition.   None of DFA's competitors share this history or reputation.

74.     For example, DFA obtains licenses from a number of high-end beauty product manufacturers to permit DFA and related entities to manufacture and sell those products in its duty free stores.   Such brands include, but are not limited to, Perry Ellis, Jennifer Aniston, and others.   Other duty free operators do not carry these brands in their stores.   Upon information and belief, other duty free operators do not carry brands in their stores that DFA does not also carry.   Consequently, DFA is the only duty free operator who carries numerous brands that directly compete with ELC beyond the brands offered by all competitors, and thus DFA stimulates interbrand competition among the manufacturers.

75.     DFA is also a maverick in offering higher payments to airport authorities during the RFP process.   As a privately held company, DFA is not constrained by return on investment requirements of the larger, international conglomerates that own DFA's competitors.   As a result, DFA is able to – and does – offer more lucrative payment proposals to airports than competing duty free operators.   DFA also is able to increase gross sales at airports above what other duty free operators are capable of achieving through its innovative displays, product offerings, marketing techniques, and business model.   Consequently, DFA is able to offer airports a higher percentage of a higher amount of sales compared to competing duty free operators.

15

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

B.   <u>Relevant Product Market</u>

76.   One of the most profitable segments in duty free stores is beauty products. "Beauty products" are goods used to enhance appearance or smell.   The most commonly recognized subcategories of beauty products are:

> a.   "Cosmetics," which refers to "make up" – goods designed to enhance the appearance of human skin – and "skin care" – goods designed to enhance the health of human skin; and
>
> b.   "Fragrances," which refers to goods designed to enhance the smell of the human body on a temporary basis.

77.   These product subcategories, each of which include dozens of individual products, constitute distinct submarkets because consumers will not substitute products in one category for those in another.   Products in one category are not reasonably interchangeable with products in another category because they have distinct uses.   A small but significant non-transitory increase in price will not cause consumers to substitute a product from a different category.   For example, a price increase in mascara, a type of cosmetic, will not cause customers to instead buy perfume, a fragrance.   A small but significant non-transitory price increase, however, may cause consumers to substitute different products within a single category or to substitute between brands offering similar products within a single category.

78.   Beauty products sold in department stores are not reasonably interchangeable with functionally identical products sold in duty free stores.

79.   Department stores also sell mass market retail brands, whereas duty free stores promote and sell only luxury brands.

80.   Both the industry and the consuming public recognize that the duty free market is distinct from other types of retail stores.   This is evidenced by, *inter alia*, the fact that most, if not all, beauty product manufacturers, including ELC, have distinct divisions devoted solely to

16

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

"travel retail" sales, as opposed to traditional retail sales to department stores and similar resellers.  Duty free sales are made exclusively through manufacturers' travel retail divisions.

81.     Customers purchasing beauty products sold in duty free stores are distinct from all other customers, even though in some instances a functionally identical product may be purchased in a non-duty free environment.  Duty free customers in the United States are outbound international travelers who desire luxury products.  Outbound international travelers are severely restricted from trying to leave the airport to visit a traditional retail store and then returning.

82.     Goods sold at airport duty free stores are sold at distinctly lower prices compared to functionally identical goods at non-duty free stores.  This is due not only to the lack of sales tax or import duties, but also to the different and lower wholesale pricing structure historically offered in the duty free industry.

83.     Airport duty free stores use a specialized vendor model, implement unique layouts, and offer a distinct array of merchandise than other retail stores that sell beauty products.

84.     In summary, beauty products sold in airport duty free stores are a distinct market.  Within this market, fragrances and cosmetics constitute distinct submarkets because products in one subcategory are not reasonably interchangeable with products in the other subcategory.  In the alternative, to the extent that makeup and skin care products (collectively "cosmetics") are not reasonably interchangeable with each other, then fragrances, makeup, and skin care products each constitute distinct product submarkets within the airport duty free market.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

C.      Relevant Geographic Market

85.      The relevant geographic market is duty free stores at airports serving international travelers in the United States.  The idea behind duty free concessions is that only outbound international travelers can purchase them.  Because international travelers are "captive" and cannot reasonably turn to any supply located outside of the departure airport, each airport constitutes a distinct geographic submarket.  In other words, each airport constitutes a distinct area of geographic competition, with competition occurring among brands within duty free stores in the airport.  When making pricing decisions, manufacturers of beauty products and duty free store operators who resell them are not constrained by beauty product retailers located outside the airport in which they operate because other retailers cannot supply products within the airport and outbound international travelers cannot, as a practical matter, leave the airport.

86.      Competition for U.S. duty free sales also occurs at the bidding stage where duty free operators compete to secure contracts to operate duty free stores in airports.  Typically, decisionmakers issue RFPs soliciting bids for the chance to run duty free stores in that airport.  RFPs require duty free operators to propose "rent" – typically a percentage of sales – that will be paid to the airport authority in exchange for the ability to run the store, among other features.  The winner of this RFP process typically receives a long term (five to ten years) exclusive contract to operate duty free stores in that airport.  Thus, competition occurs at the bidding stage among various duty free operators, but once a contract is awarded, a duty free store operator enjoys exclusivity within that airport for the length of the contract and, thus, is not constrained by other duty free operators.

87.      DFA currently operates airport duty free stores in JFK, LaGuardia, Detroit, Dulles, Miami, Boston, Baltimore (BWI), Charlotte, Salt Lake City, San Antonio, Phoenix, and

18

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

Reagan National.    Although DFA currently maintains exclusive contracts in most of those airports (a few are only exclusive in certain terminals), DFA will have to bid once each of these contracts expire pursuant to new RFPs.  DFA recently bid to operate stores in Newark, Boston, Orlando, Atlanta, and Los Angeles.

D.       Anti-Competitive Conduct

88.       ELC has a large share in supply of beauty products to duty free stores, and has sought to increase its market power and impose that power on the industry.

89.       ELC has engaged in unlawful resale price maintenance by telling duty free operators what margins to maintain.  ELC's contracts for the sale of goods to duty free stores expressly limit the maximum price duty free operators can sell ELC products and condition the sale of ELC products on compliance with this program.  When ELC attempted to raise prices – over DFA's strong objections – ELC again told duty free operators what margins to maintain (i.e., set the price to customers).  DFA's public objection to ELC's proposed price increases apparently temporarily prevented ELC from doing so, at least in some instances.

90.       ELC has demanded a disproportionately high share of the display space in duty free stores, and has demanded premium display space.

91.       ELC has engaged in a course of action designed to eliminate DFA and the brands that only DFA carries, with the specific intent to achieve and then exploit monopoly power in the relevant market.  By eliminating DFA, ELC seeks to prevent the introduction of, and continued competition from, brands that only DFA carries, increase the size and prominence of its display space, raise prices, stifle innovation, and limit consumer choice.

92.       ELC's conduct has resulted in its gaining market share.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com

93.     Upon information and belief, this conduct has included conspiring with DFA's competitors, who are motivated to harm DFA because doing so will remove the maverick.  For example, on information and belief, DFA and ELC conspired to have ELC improperly and maliciously inject itself into the duty free bid processes by making defamatory statements to various U.S. airport authorities.

94.     ELC has also engaged in partnerships with DFA's duty free competitors, thereby facilitating the conspiracy.  For example, ELC has engaged in a partnership with DFASS – one of DFA's competitors – to operate an airport store.  ELC has also engaged in a travel retail partnership venture with the Heinemann Group, which operates Travel Retail – one of DFA's competitors.

95.     ELC claims that the absence of its brands can have detrimental effects on airport duty free concessions.  ELC perpetuates the view that it has "must have" beauty product brands that are necessary to attract consumers in U.S. airport duty free stores.  By promoting this view, ELC has been permitted to exert control over many airport RFP processes as shown above.  This strategy has been successful in some airports, which, in one case, has explicitly stated that DFA's inability to offer ELC brands is a sufficient ground alone to reject DFA's bid.  Hence, in at least some airports, ELC has successfully been able to exert the power to exclude competition by convincing airports that it is a "must have."  This, in turn, has permitted ELC to eliminate certain brands – namely those carried only by DFA – from certain airports, thus diminishing interbrand competition in the relevant market.

96.     There is no pro-competitive justification for ELC's refusal to deal with DFA.  For example, in JFK airport, duty free stores are run by different operators in different terminals.  DFA is the exclusive operator in two terminals with competitors operating in all the other

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

terminals.  ELC supplies products to all duty free operators except DFA at JFK.  Upon information and belief, the only plausible reason that ELC would act counter to its economic interests and refuse to sell to DFA is that, through its conspiracy with DFA's competitors, ELC specifically intends to monopolize certain beauty product submarkets by eliminating DFA.

97.    ELC's conduct includes, but is not limited to, conspiring with DFA's competitors to effectuate an unlawful horizontal price-fixing scheme on rents offered during the RFP process.  This conspiracy will be fully accomplished once ELC and its co-conspirators are able to eliminate DFA from the RFP process and the duty free industry altogether.

98.    Upon information and belief, ELC and its co-conspirators initiated the conspiracy soon after DFA publicly opposed ELC's plan to increase duty free prices.  Upon information and belief, ELC sought the participation of DFA's competitors to assist during the RFP process by utilizing their contacts and involvement in that process.   DFA's competitors, for example, reinforced the perception perpetuated by ELC that the inability to supply ELC products was fatal.

99.    ELC has also acquired competing beauty product brands carried exclusively in duty free stores by DFA with the specific intent to monopolize certain beauty product submarkets and in furtherance of its conspiracy to eliminate DFA from the market.  In 2010, ELC acquired Smashbox and then promptly ceased sales to DFA and demanded that DFA remove all Smashbox products and displays from its stores, even though DFA had built up the Smashbox brand in duty free stores.

100.    There was no pro-competitive reason for ELC to abruptly cease Smashbox sales to DFA and doing so was against ELC's economic interests in a properly functioning market.  DFA attempted to negotiate future sales with ELC, but to no avail.

21

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

101.    Upon information and belief, ELC was motivated to purchase Smashbox because it provided an opportunity to further the goals of the conspiracy.  ELC has purposefully acquired numerous competing brands in the past to increase its market share, reduce competition, and achieve monopoly power.  Upon information and belief, ELC will continue to acquire competing brands in the future both to increase its market share and because it will permit ELC to eliminate additional sources of supply for DFA, thereby effectively driving DFA out of business.  This pattern of conduct will increase the likelihood that ELC will be able to obtain and exert monopoly power.

102.    DFA has approached ELC in an effort to resume their broader and mutually beneficial relationship several times.  ELC refuses to even discuss this possibility, although there is no plausible pro-competitive justification for refusing to deal with DFA.

103.    In short, ELC has chosen to sacrifice certain financial gain and instead to seek monopolistic profits it can achieve if it can drive DFA out of business and eliminate brands carried only by DFA that compete with ELC.  That ELC would be required to sacrifice short term gains for a long time period (five-ten years) further demonstrates there is no plausible explanation for its conduct other than its intent to achieve monopoly power (and earn monopoly profits) through exclusionary conduct.

104.    ELC's conduct has had an actual detrimental effect on competition at the bidding level for RFPs by corrupting the competitive process.  DFA has lost RFPs because of ELC's conspiratorial refusal to deal with DFA and the successful efforts of ELC and co-conspirators to convince airports that DFA's inability to sell ELC products is evidence of DFA's inferior quality and fatal to any duty free concession proposal – which is exactly the result sought by ELC and duty free operator co-conspirators.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

105.     ELC's conduct has had an actual detrimental effect on interbrand competition at the beauty product manufacturer level by inhibiting the interbrand competition stemming from DFA's introduction and promotion of competing brands that are not carried by any other duty free operators in U.S. airports.

106.     This conduct, if it is allowed to continue, will irretrievably harm competition in the relevant markets and submarkets.

### FIRST CAUSE OF ACTION
**(Violation of Sherman Act § 1)**

107.     DFA repeats and realleges the allegations set forth in paragraphs 1-106 of this Complaint as if set forth in full herein.

108.     The relevant market for purposes of Count One are: (1) the bid process to obtain duty free concessions at U.S. airports and (2) fragrances and cosmetics sold in U.S. airport duty free stores or, in the alternative, fragrances, makeup, and skin care products sold in U.S. airport duty free stores.

109.     In furtherance of the conspiracies and other unlawful conduct herein alleged, ELC along with co-conspirators in direct horizontal competition with DFA – such as DFASS, Nuance, International Shoppes, and Travel Retail – who also stand to profit from DFA's exclusion, agreed to exclude DFA as a competitor and thereby unreasonably restrain trade in the relevant market.

110.     ELC and co-conspirators have thereby excluded competition in the process of applying to operate duty free stores in Newark, Boston, and Orlando, with necessary adverse effects in the relevant market such as decreasing the choices available to customers among competing beauty product brands.  ELC's conduct, if not prohibited, will continue to negatively

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

affect competition in other RFPs, such as competition to offer higher rent payments to airports, as well.

111. By reason of the foregoing, commencing at least as early as December 2008 – and perhaps earlier – and continuing thereafter up to and including the date of the filing of this Complaint, ELC and co-conspirators have entered into agreements and engaged in a conspiracy in unreasonable restraint of trade of the aforesaid interstate trade and commerce in the relevant. This conduct harmed competition in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

112. The aforesaid contracts, combination, and conspiracy have consisted of a continuing agreement, understanding, concert of action, plan, and course of dealing by and between ELC and co-conspirators, the substantial terms and purposes of which have included, among other things:

a. the elimination of DFA from the marketplace to permit ELC to suppress interbrand competition between ELC and other manufacturers in the relevant market;

b. the elimination and suppression of price competition in proposals made to airport authorities as part of the bidding process to run duty free stores in individual U.S. airports;

c. the elimination and suppression of competition for innovation and introduction of new beauty product brands to compete with established brands;

d. the elimination and suppression of competition for quality improvements in the presentment of duty free merchandise; and

e. the attempted destruction of DFA as a competitor with ELC's co-conspirator duty free operators, and the effective exclusion of DFA from the bid process to operate duty free stores at various U.S. airports.

113. Pursuant to and in furtherance of the unlawful contracts, combination and conspiracy alleged herein, and with the intent of effectuating same, ELC and co-conspirators

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

have participated in the conspiracy and done those things which they combined and conspired to

do, including, among other things:

   a. effectuating a conspiracy to exclude DFA and otherwise unreasonably restrain
      competition, resulting in adverse effects on competition in the relevant market
      in violation of the Sherman Act § 1;

   b. effectuating a horizontal agreement among DFA's competitors to restrain the
      competitive bidding process and thereafter fix pricing in the relevant market
      in violation of Sherman Act § 1; and

   c. limiting competition for the bid process to operate duty free stores
      (competition to enter the market) and hence from the relevant market of
      selling duty free beauty products to consumers in U.S. airports.

   114. The contracts, combination and conspiracy hereinabove alleged and the wrongful

acts done pursuant thereto have had, and will have, the following harmful effects, among others:

   a. competition to enter the market for the retail sale of beauty products in certain
      U.S. airport duty free stores has been suppressed and restrained with the
      adverse effects on airline passengers including lack of price competition,
      reduction of consumer choice, and decreased quality;

   b. DFA's elimination from the RFP processes will leave ELC's co-conspirators
      free to fix prices offered to airport authorities at lower-than-competitive
      payments, and hence deprive airport authorities and the consumers they
      represent from obtaining revenues and profits consistent with a competitive
      market;

   c. DFA has lost, and will continue to lose, revenue and profits from existing and
      prospective U.S. airport duty free stores; and

   d. consumers of U.S. airport duty free beauty products have been and will
      continue to be denied the benefit of a free and competitive process for
      applicants seeking to enter the market to sell beauty products in U.S. airport
      duty free stores as new RFPs are issued and hence, consumers have been and
      will continue to be deprived of the benefit of increased consumer choice of
      brands, lower prices, and greater quality that would be reflective of
      unrestrained competition in the bid process if DFA were able to obtain airport
      duty free concessions.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

115.     The anticompetitive, predatory, and tortious conduct engaged in by ELC and co-conspirators as hereinabove alleged has, and continues to, substantially, materially, and directly injure DFA in its business and property in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**(Violation of Sherman Act § 2 by Conspiracy to Monopolize)**

116.     DFA realleges and incorporates by reference herein the allegations set forth in Paragraphs 1-106 of this Complaint as if fully set forth herein.

117.     The relevant markets for purposes of Count Two are (1) fragrances and cosmetics sold in U.S. airport duty free stores or, in the alternative, (2) fragrances, makeup, and skin care products sold in U.S. airport duty free stores.

118.     ELC has combined and conspired with duty free store operator co-conspirators – with a specific intent to monopolize the relevant markets – to exclude DFA in order to prevent the introduction and continued sale of competing brands and to maintain disproportionately high levels of display space in duty free stores.

119.     ELC and its co-conspirators have engaged in overt acts in furtherance of this conspiracy.  For example, ELC and its co-conspirators have engaged a pattern of tortious activity with the specific intent to exclude DFA and permit ELC to achieve monopoly power, including sending unsolicited letters disparaging DFA to airport authorities.

120.     ELC has engaged in other overt acts in furtherance of this conspiracy.  For example, ELC has bought competing brands only sold by DFA in U.S. airport duty free stores, such as Smashbox, to diminish interbrand competition at the beauty product manufacturing level.

121.     ELC has further refused to deal with DFA, knowing that its perceived status as a "must have" brand would lead airport authorities to reject DFA's bids outright.  ELC has

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

persuaded other duty free operators to assist with perpetuating this "must have" perception and participate in the campaign of tortious and exclusionary conduct as members of the conspiracy. The conspiracy among ELC and its co-conspirators (DFA's competitors) has succeeded in several airport RFPs where DFA has lost bids both expressly and implicitly due to ELC's refusal to deal with DFA and the related tortious conduct undertaken by ELC and its co-conspirators.

122.   ELC and its co-conspirators acted with an express purpose to exclude DFA – and, consequently, the brands that compete with ELC that DFA has introduced – from the relevant markets.  Upon information and belief, duty free operators are motivated to participate in this conspiracy because ELC will permit them to maintain the same margins in the future once it obtains monopoly power and is able to control prices, and because eliminating DFA will permit the duty free co-conspirators to offer lower rent payments to airports once DFA is eliminated from the market.

123.   The combination and conspiracy hereinabove alleged and the wrongful acts done pursuant thereto have had, and will have, the following harmful effects, among others:

  a.  competition in the relevant market has been and will continue to be suppressed with the adverse effects on airline passengers including lack of price competition, reduction of consumer choice, and decreased quality; and

  b.  customers have been and will continue to be denied the benefit of a free and competitive process for entities seeking to enter the market to sell beauty products in U.S. airports duty free stores.

124.   The anticompetitive, predatory, and tortious conduct engaged in by ELC and co-conspirators as hereinabove alleged has, and continues to, substantially, materially, and directly injure DFA in its business and property in an amount to be determined at trial.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T:  305.858.2900   F:  305.858.5261
Email:  info@coffeyburlington.com   www.coffeyburlington.com

## THIRD CAUSE OF ACTION
### (Violation of Sherman Act § 2 by Attempt to Monopolize)

125.    DFA realleges and incorporates by reference herein the allegations set forth in paragraphs 1-106 of this Complaint as if fully set forth herein.

126.    The relevant market for purposes of Count Three is (1) cosmetics sold in U.S. airport duty free stores, or, in the alternative, (2) skin care products sold in U.S. airport duty free stores.

127.    ELC has engaged in predatory and exclusionary conduct with a specific intent to monopolize the relevant market with a dangerous probability of success, in violation of Section 2 of the Sherman Act.

128.    ELC has required duty free store operators to provide disproportionate retail space for ELC products to exclude competing brands, and to devote premium display space for ELC products only.  ELC has engaged in a course of conduct designed to drive duty free stores out of business if they do not comply with these demands so that it can achieve monopoly power in the relevant market.

129.    Such conduct has included combining and conspiring with other duty free store operator co-conspirators – with a specific intent to monopolize the relevant market – to exclude DFA in order to prevent the introduction and continued sale of competing brands and to maintain disproportionately high levels of display space in duty free stores.  ELC has similarly bought competing brands sold only by DFA in U.S. airport duty free stores, such as Smashbox, to diminish interbrand competition at the beauty product manufacturing level.

28

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

130.     ELC has also engaged in a pattern of tortious activity with the specific intent to exclude DFA and permit ELC to achieve monopoly power in the relevant market, including sending unsolicited letters disparaging DFA to airport authorities.

131.     ELC has further refused to deal with DFA, knowing that its perceived status as a "must have" brand would lead airport authorities to reject DFA's bids outright.  ELC has persuaded other duty free operators to assist with perpetuating this "must have" perception and participate in the campaign of tortious and exclusionary conduct for the express purpose of monopolizing the relevant market.  ELC's course of conduct has succeeded in several airport RFPs where DFA has lost bids both expressly and implicitly due to ELC's refusal to deal with DFA and related tortious conduct.

132.     ELC acted with an express purpose to exclude DFA – and, consequently, the brands that compete with ELC that DFA has introduced – from the relevant market.

133.     ELC has market power, as evidenced by ELC's market share in the relevant market of approximately 50% or greater as well as ELC's ability to successfully exclude competition.

134.     ELC's high market share, its course of conduct, and the effectiveness of its exclusionary behavior – as well as high barriers to entry – thus far indicate a dangerous probability of successful monopolization through both ELC's demands for disproportionately high retail space as well ELC's successful conspiracy to eliminate DFA and thus exclude competition.

135.     The anticompetitive, predatory, and tortious conduct engaged in by ELC and co-conspirators as hereinabove alleged has, and continues to, substantially, materially, and directly injure DFA in its business and property in an amount to be determined at trial.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Prospective Business Relationships)

136.    Plaintiff realleges and incorporates by reference herein the allegations in allegations set forth in paragraphs 1-106 of this Complaint as if fully set forth herein.

137.    Plaintiff enjoyed an existing, prospective, or both, advantageous business relationship with the Newark, Boston and Orlando Airport Authorities.

138.    Defendant knew of Plaintiff's advantageous business relationships with the Newark, Boston and Orlando Airport Authorities.

139.    Defendant intentionally and unjustifiably interfered with Plaintiff's advantageous business relationships with the Newark, Boston and Orlando Airport Authorities, using improper means and methods, including by sending unsolicited letters replete with disparaging statements and innuendo regarding its relationship with Plaintiff, Plaintiff's business practices, and Plaintiff's ability to provide certain products.

140.    As a result of Defendant's unjustifiable and intentional interference with Plaintiff's business relationships, Plaintiff has suffered damages in an amount to be determined at trial. Defendant's interference is part of an ongoing and malicious smear campaign to damage Plaintiff's business relationships. As a result thereof, Plaintiff has suffered and will continue to suffer irreparable injury and is also entitled to injunctive relief.

**WHEREFORE**, Plaintiff asks that the Court:

          a.    enter judgment that Defendant has engaged in conduct in violation of Sections 1-2 of the Sherman Act;

          b.    enter judgment for Plaintiff against Defendant on the aforesaid antitrust causes of action in an amount equal to three times the amount of damages sustained by

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com     www.coffeyburlington.com

Plaintiff as a result of its injury to business and property by reason of Defendant's violations of the Sherman and Clayton Acts;

c.    enter judgment for Plaintiff against Defendant on the aforesaid state law causes of action in an amount to be determined at trial, together with punitive damages of three times the amount of damages sustained by Plaintiff;

d.    enter judgment for Plaintiff against Defendant awarding Plaintiff its reasonable attorneys' fees and costs of this action;

e.    enter an order enjoining Defendant from continuing its unlawful and wrongful conduct as hereinabove alleged; and

f.    order such other and further relief as is just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F: 305.858.5261
Email:  info@coffeyburlington.com      www.coffeyburlington.com

Dated:  April 26, 2012

Respectfully submitted,

COFFEY BURLINGTON, P.L.
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Phone: 305-858-2900
Fax: 305-858-5261

By:  s/Paul J. Schwiep
Paul J. Schwiep, Fla. Bar No. 823244
pschwiep@coffeyburlington.com
Gabriel Groisman, Fla. Bar No. 25644
ggroisman@coffeyburlington.com

 - and –

CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Fax: 202.628.5116
Mark Klapow (*to apply for pro hac vice admission*)
mklapow@crowell.com
Elliot Golding (*to apply for pro hac vice admission*)
egolding@crowell.com

*Attorneys for Duty Free Americas, Inc.*

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T:  305.858.2900    F:  305.858.5261
Email:  info@coffeyburlington.com    www.coffeyburlington.com